GEORGE L. A. KELLY & another *vs.* WALTER S. HOLBROOK.

Essex.   November 8, 1905. — May 17, 1906.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Frauds, Statute of. Agency. Auctioneer.*

The auctioneer at a foreclosure sale of real estate has no authority to bind the parties under the statute of frauds by signing a memorandum which does not state the terms of the sale correctly.

The auctioneer at a foreclosure sale of a second mortgage of real estate, who sells the property subject to a first mortgage of $800 for the sum of $346 from which are to be deducted the amount of unpaid taxes and "some interest due on the first mortgage," with the further stipulation that $100 is to be paid by the purchaser at the time and place of the sale, has no authority to bind the parties under the statute of frauds by signing a memorandum which states that the property will be sold subject to a mortgage of "$800 as principal and accrued interest as may be due thereon and all unpaid taxes and assessments," and that the property was sold to the purchaser named for $346.

BILL IN EQUITY, filed November 15, 1901, to enforce the specific performance of an alleged contract of sale of certain real estate in Haverhill on the foreclosure of a second mortgage held by the defendant subject to a first mortgage for $800.

The defendant by an amendment to his answer set up the statute of frauds.

In the Superior Court the case was heard by *Holmes*, J., who made a decree for the plaintiffs, from which the defendant appealed. At the request of the defendant the judge under R. L. c. 159, § 23, reported the material facts found by him.

The memorandum referred to in the opinion was signed by one Wood, the auctioneer, immediately after the auction. It was signed on a page on which was pasted a printed notice of

the sale. The last paragraph of the printed notice was as follows:

"Said premises will be sold subject to a mortgage to Walter S. Holbrook in the sum of $800 as principal and accrued interest as may be due thereon and all unpaid taxes and assessments."

Beneath it was written:

"This sale was adjourned until Oct. 3, at 10 A. M.
                "R. L. Wood, Auctioneer, Sept. 3, 1901."

"Oct. 3, 1901, this property was sold to Kelly Bros. for $346 and Holbrook agreed to stand back of the title of the said property, there being a dispute as to the title.
                "R. L. Wood, Auctioneer."

The actual terms of the sale are stated in the opinion.

*N. C. Bartlett*, for the defendant.

*H. J. Cole*, (*W. S. Peters* with him,) for the plaintiffs.

HAMMOND, J. The main question is whether the memorandum of sale is sufficient to meet the requirements of the statute of frauds. It was not signed by the defendant, but by the auctioneer. Assuming in favor of the plaintiffs that an auctioneer as such can, as agent of each party, sign the memorandum of sale so as to make each answerable so far as respects the statute of frauds, still this agency of the auctioneer is restricted to the contract as it actually was made. Without further authority than that which comes from his position as auctioneer he cannot bind the parties by a memorandum of any other contract than that which actually was made. It does not appear in this case that the auctioneer was vested with any other authority.

The judge has found that the contract of sale was that the plaintiffs were to pay $346, and that they were to have the property subject only to the principal of the $800 mortgage, the actual agreement being that from the $346 to be paid by the plaintiffs there should first be deducted the taxes still unpaid and "some interest due on the first mortgage." In other words, the agreement was that there were included in the $346 the sums represented by the taxes and "some accrued interest." It further appeared that by the terms of the sale $100 was to be paid by the purchaser at the time and place of the sale. Such

was the contract which the auctioneer could sign as the agent of the parties. The contract he did sign was that the plaintiffs were to pay $346 for the premises subject to the $800 mortgage " and accrued interest as may be due thereon and all unpaid taxes and assessments." This manifestly is not the contract which was made.

It is argued however by the plaintiffs that the part of the memorandum upon which they seek to hold the defendant is the part which contains the promise to convey the land, and that, inasmuch as that promise is clearly stated, it is immaterial what, if anything, is expressed in the writing about the consideration of the promise; and in support of that contention they rely upon *Hayes* v. *Jackson*, 159 Mass. 451, where it was held by a majority of this court that under our statute (now R. L. c. 74, § 2) it is not necessary that the consideration of the promise should be in writing. It is to be observed, however, that the writing in that case was signed by the parties, and of course there arose no question as to their power to bind themselves. But in the case before us the objection of the defendant goes deeper than the statute of frauds. It raises not simply the question whether the memorandum if signed by the defendant or his authorized agent would have bound the defendant, but the further and deeper question whether the agent had the power to sign this contract at all as the agent of the defendant. The authority of the auctioneer was limited. He could for the defendant sign a memorandum of the contract as made, but he had no authority to sign any other. This was decided in the case of a sale made by a broker, and the rule was explained, in *Coddington* v. *Goddard*, 16 Gray, 436, 443, 445. The reason of the rule is that the auctioneer as such is a mere special agent, having no general authority from the parties to prepare and execute a contract for them, but an authority founded only on the sale he has made, and limited by law to the duty to make that sale binding by signing a written memorandum of it. See also *Elliot* v. *Barrett*, 144 Mass. 256. The memorandum in this case being incorrect in matters material to the whole contract, the auctioneer had no authority to sign it for any purpose, and since it is not signed " by the party sought to be charged therewith, or by some person thereunto by him lawfully authorized,"

the plaintiffs have failed to show that the promise upon which they seek to hold the defendant was in writing; and the defence under the statute of frauds must prevail.

*Decree reversed.*