MOSES FORMAN & another *vs.* IDA GADOUAS & another.

Bristol. October 23, 1923. — January 2, 1924.

Present: RUGG, C.J., BRALEY, DeCOURCY, & PIERCE, JJ.

*Equity Pleading and Practice*, Appeal. *Equity Jurisdiction*, Specific performance. *Contract*, Validity, Performance and breach, Mutuality. *Frauds, Statue of. Trust.*

Upon an appeal from a final decree in a suit in equity which had been heard by a master who had filed a report of his findings of fact without a report of the evidence, this court considers and decides the suit on the facts found and reported by the master and inferences which they think proper to draw therefrom, without regard to inferences drawn by the trial judge and included in a written statement of his findings and decision.

While specific performance of an agreement for the conveyance of real estate should not be decreed in a suit in equity, even though there was no sufficient ground for rescission of the agreement, if the result of such a decree would be oppressive or unfair, or if the plaintiff has been guilty of conduct savored with injustice touching the transaction, an appeal from a decree dismissing a suit on those grounds was sustained and a decree directing specific performance was ordered by this court where it appeared that the trial judge who ordered the decree dismissing the bill based his action upon inferences drawn by him from facts found by a master which were wholly unwarranted by those facts, and where there was no basis in the master's findings for the refusal of a decree directing specific performance.

The title to certain real estate was held by a trustee in trust to sell or convey it, at the request of a sister of the trustee, free from the trust and to pay the proceeds of the sale to her. The sister orally agreed to sell the property and signed a memorandum of sale in substantially the following terms: " Sold the property to . . . [naming the purchaser and describing

the property by number on a street] purchase price $24,000, $11,500. first mortgage and the balance to be paid $4,000 in cash $8,500 to be paid in instalment to bring the amount $24.000.  Interest on balance @ 6% clear of all incumbrances.  The instalments $50.00 per month."  The agreement orally made was for a sale of the property for $24,000, of which the sum of $11,500, the amount of an existing first mortgage, was to be assumed by the purchaser, who was to pay $4,000 in cash and give back a second mortgage for the balance of the purchase price, $8,500, to be paid by instalments of $50 monthly, and with interest on the principal at six per cent per annum. At the same time that she signed the memorandum, the sister received $100 from the purchaser and signed a receipt reading, " Received $100. deposit on the sale within 30 days."  In a suit against the trustee and his sister for specific performance of the agreement, it was *held*, that

(1) The papers signed by the sister constituted a memorandum sufficient to satisfy the statute of frauds, G. L. c. 259, § 1, cl. 4;

(2) The two papers signed by the sister should be read and treated together in order to ascertain the true nature and legal sufficiency of the memorandum;

(3) The omission from the memorandum of that part of the agreement, providing that payment of the balance of the purchase price was to be secured by a mortgage given by the purchaser, did not prevent the plaintiff from obtaining nor shield the seller for making specific performance of the contract;

(4) The general principle, that equity refuses specific performance of a contract where there is no mutuality of obligation, was not applicable to the facts in this suit, since mutuality of obligation appeared, that of the plaintiff being evidenced by oral evidence and his admissions in the bill and that of the defendant sister by the memorandum.

BILL IN EQUITY, filed in the Superior Court on February 2, 1920, with a writ of summons and attachment dated December 22, 1919, upon which a special attachment of real estate had been made, by Moses Forman and Henry J. Forman against Ida Gadouas and Arthur F. Janson, seeking to compel the specific performance of an alleged contract by the defendant Ida Gadouas to convey to the plaintiffs real estate in Fall River which stood in the name of the defendant Arthur F. Janson in trust for her.

In the Superior Court, the suit was referred to a master. Material facts found by the master are described in the opinion.  No exceptions to the master's report were filed.

The suit was heard upon the master's report by *Dubuque,* J., who filed a statement of his " Findings and Decision," material portions of which are described in the opinion. No interlocutory decree was entered confirming the report, although the judge ordered the entry of such a decree.  By

order of the judge, a final decree was entered confirming the report and dismissing the bill without costs. The plaintiffs appealed.

*C. P. Ryan,* for the plaintiffs.

*D. R. Radovsky,* for the defendants.

RUGG, C.J. This is a suit in equity to compel the specific performance of an agreement for the conveyance of land. The case was referred to a master, upon whose report it was heard and decided by a judge of the Superior Court. A decree was entered confirming the master's report and dismissing the bill. The plaintiff's appeal brings the case here.

The master found that the defendant Gadouas had said to a broker named Markell that her property was for sale for the sum of $24,000, without any commission or brokerage to be paid by her, or for $24,500, should she have to pay the broker's commission. Markell accordingly requested the plaintiffs to look at the property of the defendant, which they did and notified him that they desired to purchase it. Markell then again saw Mrs. Gadouas and said to her that the plaintiffs were desirous of purchasing the property for $24,000, of which the sum of $11,500, the amount of an existing first mortgage to a savings bank, was to be assumed by the plaintiffs, and they were to pay $4,000 in cash and give her a second mortgage for the balance of the purchase price, $8,500, to be paid by instalments of $50 monthly, and with interest on the principal at six per cent per annum. Mrs. Gadouas verbally accepted the offer and requested Markell to notify the plaintiffs to call early on the following morning.

The two plaintiffs accordingly went to the house of the defendant Gadouas on November 18, 1919, and she then and there signed a paper of the following tenor: " Sold the property to Morris & Henry J. Forman 583 So. Main St. & 18 Cottage purchase price $24,000.00 $11,500. first mortgage and the balance to be paid $4,000.00 in cash $8,500 to be paid on instalment to bring the amount $24.000. Interest on balance @ 6% clear of all incumbrances. The instalments $50.00 per month." At the same time $100 in money was paid to her by the plaintiffs and she signed this: " Received

$100. deposit on the sale within 30 days." The title to the real estate stood in the name of the other defendant, Arthur .F. Janson, the brother of Mrs. Gadouas, as trustee for her on the trust (amongst others not material to the issues here raised) at her request to sell and convey the same free from the trust and to pay the proceeds to her. The defendant Janson did not sign the agreement, disapproved of the sale as soon as he learned of the agreement, and was unwilling to join in the conveyance. He returned the $100 to the plaintiffs in the later part of December, 1919, which they sent back.

The plaintiffs on November 18 and for thirty days or more thereafter, were able to obtain the necessary amount of cash and otherwise were ready, willing and able to fulfil the terms of the purchase set out in the memorandum and in the oral agreement by giving a mortgage to secure $8,500 part of the purchase price. The defendants have refused to make conveyance of the land to the plaintiffs.

The judge states in his " Findings and Decision " that " There is no special equity which requires the performance of the contract; on the other hand I find that it would be unreasonable and oppressive for the defendant to be compelled to part with her home and only means of income under a contract improvidently, unconscionably and hastily made, when she, a married woman living apart from her husband, acted without independent advice. She repudiated the transaction and offered to return the deposit as soon as she realized the effect of the same. I find that the plaintiffs only sought to buy this piece of valuable property, which, admittedly, has great prospective value for an inadequate consideration, taking undue advantage of the defendant for speculative purposes only."

These findings were merely inferences drawn from the master's report. No evidence accompanied the report. Such findings do not stand on the same footing as do findings made by a judge based on the hearing of oral testimony which are not reversed unless plainly wrong. *Lindsey* v. *Bird*, 193 Mass. 200. *Martell* v. *Dorey*, 235 Mass. 35, 40. *Cook* v. *Mosher*, 243 Mass. 149, 153. Where the facts are in a mas-

ter's report, this court on appeal considers and decides the case on those facts (which commonly must be accepted as true) and their proper inferences without regard to the inferences drawn by the judge. *Glover* v. *Waltham Laundry Co.* 235 Mass. 330, 334, and cases there collected. *Curran* v. *Magee,* 244 Mass. 1, 5.

The facts found by the master do not warrant the inferences that it would be " unreasonable and oppressive " to require the defendant Gadouas to carry out the contract, that the property has great prospective value, that the consideration to be paid was inadequate, or that undue advantage was taken of the defendant Gadouas by the plaintiffs. Those matters were put in issue by the defendants' answer. The master failed to find that any one of these averments was a fact. It is found that the brother of the defendant Gadouas disapproved the sale on several grounds as soon as he was informed of it. The master does not find that those grounds were sound in truth. For aught that appears in the master's report, the price may represent the full value of the property, the defendant Gadouas, who was fifty-one years of age, may be a competent business woman quite able to care for her own interests; she may not have been overreached in any particular or to any degree, and the bargain may have been a fair one and the property may have no speculative or prospectively increasing value.

Specific performance is not a matter of strict and absolute right. A petition therefor is addressed to the sound discretion of the court. It will not be granted, if the result would be oppressive or unfair even though there is no sufficient ground for rescission of the agreement, or if the plaintiff has been guilty of conduct savored with injustice touching the transaction. *Banaghan* v. *Malaney,* 200 Mass. 46. *Richardson Shoe Machinery Co.* v. *Essex Machine Co.* 207 Mass. 219, 225. *Peoples Express, Inc.* v. *Quinn,* 235 Mass. 156. The case at bar is plainly distinguishable from cases of that kind. No facts are set forth in the master's report which warrant the inference that it would work unusual hardship to order specific performance of the contract. *Nickerson* v. *Bridges,* 216 Mass. 416.

The master's report is utterly lacking in any findings of fact or statements of evidence which warrant an inference that on general equitable principles specific performance ought not to be decreed. In this aspect the case at bar is the ordinary one of a fair agreement between competent parties to convey land. Commonly specific performance of such agreements is required by chancery courts in the absence of special circumstances rendering it inequitable. *Staples* v. *Mullen,* 196 Mass. 132. *Noyes* v. *Bragg,* 220 Mass. 106, 109. *Morse* v. *Stober,* 233 Mass. 223. *Dennett* v. *Norwood Housing Association, Inc.* 241 Mass. 516.

The papers signed by the defendant Mrs. Gadouas and already quoted constituted a memorandum·sufficient to satisfy the statute of frauds. It is provided by G. L. c. 259, § 1, that " No action shall be brought: . . . Fourth, Upon a contract for the sale of lands . . . Unless the . . . contract or agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith . . . ." Manifestly the paper signed by the defendant Mrs. Gadouas was not a full contract or agreement. Therefore the principles of law relative to the construction and variations of such instruments have no relevancy to the case at bar. The paper signed by the defendant, Mrs. Gadouas, who is the party to be charged, was a memorandum of the agreement and is to be governed by the principles applicable thereto under the statute of frauds. It further is provided by G. L. c. 259, § 2, that " The consideration of such . . . contract or agreement need not be set forth or expressed in the writing signed by the party to be charged therewith, but may be proved by any legal evidence."

The two papers hitherto quoted and signed by the defendant Mrs. Gadouas are to be read and treated together in order to ascertain the true nature and legal sufficiency of the memorandum. *Nickerson* v. *Weld,* 204 Mass. 346, 354–357. *Harvey* v. *Bross,* 216 Mass. 57. *Schmoll Fils & Co. Inc.* v. *Wheeler,* 242 Mass. 464, 469.

The two papers signed by the defendant Mrs. Gadouas set forth with accuracy every obligation to be performed by her. Confessedly the description of the land to be conveyed

was sufficient. The quality of the title was specified. The time of performance was stated. The price was set forth with details as to cash and first mortgage and as to the balance in respect to its amount, times of payment and interest. The only element omitted was that the payment of that balance was to be secured by a second mortgage to be given by the plaintiffs. That, however, was to be executed by the plaintiffs, who are seeking to compel the defendant Mrs. Gadouas to perform her part of the agreement and who are willing to perform every obligation resting on them. It is not essential that the memorandum be signed by both parties to the agreement but only by the party to be charged. It is enough if a sufficient memorandum is signed by the party to be charged setting forth all stipulations to be performed by him, and that the other party has assented to or accepted the terms of the agreement. That he has thus accepted and assented is sufficiently manifest from bringing his action. *Dresel* v. *Jordan,* 104 Mass. 407, 412.

The omission from the memorandum signed by the defendant Mrs. Gadouas of the part of the agreement that payment of the balance of the purchase price was to be secured by a mortgage given by the plaintiffs does not prevent the plaintiffs from obtaining, nor shield the defendant Mrs. Gadouas from making, specific performance of the contract. The giving of that mortgage security was a part of the consideration to be paid by the plaintiffs and may be shown by parol in a suit against the defendant Mrs. Gadouas. The case upon this point is governed by numerous authorities from which in principle it is indistinguishable. *Packard* v. *Richardson,* 17 Mass. 122. *Hayes* v. *Jackson,* 159 Mass. 451. *White* v. *Dahlquist,* 179 Mass. 427. *Desmarais* v. *Taft,* 210 Mass. 560. It is precisely within the authority of *Park* v. *Johnson,* 4 Allen, 259.

There is nothing inconsistent with this conclusion in *Bogigian* v. *Booklovers Library,* 193 Mass. 444, or in *Pearlstein* v. *Novitch,* 239 Mass. 228. In the former of these two cases the attempt was to secure performance by the defendant of an active obligation not stated in the memorandum, and in the latter the attempt was to vary the terms of a

formal contract signed by both parties. The authority of *Grace* v. *Denison,* 114 Mass. 16, on this point was greatly shaken if not overruled by *Hayes* v. *Jackson,* 159 Mass. 451, 453. In *Morton* v. *Dean,* 13 Met. 385, and *Riley* v. *Farnsworth,* 116 Mass. 223, essential terms of the sale apart from the consideration were omitted. In *Elliot* v. *Barrett,* 144 Mass. 256, there was no sufficient memorandum for at least two independent reasons. Other cases relied on by the defendant Mrs. Gadouas, *Howe* v. *Walker,* 4 Gray, 318, *Ashcroft* v. *Butterworth,* 136 Mass. 511, and *White* v. *Bigelow,* 154 Mass. 593, are too clearly different from the case at bar to merit discussion.

The general principle undoubtedly is that equity refuses specific performance of contracts where there is no mutuality of obligation. *Putnam* v. *Grace,* 161 Mass. 237, 247. *Boston & Worcester Street Railway* v. *Rose,* 194 Mass. 142, 149. But that principle is not applicable to contracts unenforceable against the plaintiff under the statute of frauds in suits for specific performance against a defendant who has bound himself by signing a memorandum sufficient under that statute. The bringing of the suit by the plaintiff is proof of his assent to the agreement and establishes mutuality. There is thus a mutual contract, although the proof as to the defendant is expressed by signature to a writing, while that as to the plaintiff rests on oral evidence and on the admissions of his bill. This proposition is well settled. *Old Colony Railroad* v. *Evans,* 6 Gray, 25, 33. *Dresel* v. *Jordan,* 104 Mass. 407. *Slater* v. *Smith,* 117 Mass. 96. *Nickerson* v. *Bridges,* 216 Mass. 416, 421. *Record* v. *Littlefield,* 218 Mass. 483, 485. *Cashman* v. *Bean,* 226 Mass. 198, 202. Fry, Spec. Perf. (5th ed.), §§ 470, 471.

The bill may be maintained against both the defendants. Mrs. Gadouas under the trust deed has an absolute and unqualified right to require the trustee to convey the property to her nominee free from all trusts and to pay to her the proceeds. It is equally the absolute and unqualified duty of Janson to make conveyance. The obligation of Mrs. Gadouas under her agreement is such that equity will require the conveyance to be made.

Equity under these conditions will compel each defendant to perform his plain legal duty.  *Kuhn* v. *Eppstein,* 219 Ill. 154.  *McDonald* v. *Yungbluth,* 46 Fed. Rep. 836.  *Shreck* v. *Pierce,* 3 Iowa, 350.  *Sayre* v. *Lemberger,* 92 N. J. Eq. 373, reversed on another ground in 92 N. J. Eq. 656.  See Fry, Spec. Perf. (5th ed.) § 878.

The final decree must be reversed.  An interlocutory decree may be entered confirming the master's report.  A final decree is to be entered ordering the conveyance to be made in accordance with the agreement.  The details of the decree and the matter of costs are to be fixed in the Superior Court.

*Ordered accordingly.*